GREEN v BERRIEN GENERAL HOSPITAL AUXILIARY, INC

Docket Nos. 86566, 86567. Argued October 4, 1990 (Calendar No. 12).
Decided December 27, 1990, released January 22, 1991.

Donald L. Green, for himself and as personal representative of
the estate of Jason R. Green, deceased, and Dorothy M. Green
brought a wrongful death action in the Berrien Circuit Court,
against Berrien General Hospital Auxiliary, Inc., and Jane
Hardy, R.N., and Carol Dennis, R.N., alleging medical malprac-
tice. The court, Ronald J. Taylor, J., granted summary disposi-
tion for the defendants on the basis of governmental immunity.
The Court of Appeals, WEAVER, P.J., and GRIFFIN, J. (MURPHY,
J., dissenting), affirmed, finding that because the nurses en-
gaged in a series of medical decisions requiring personal delib-
eration and judgment, their acts were discretionary and pro-
tected under the governmental immunity act (Docket Nos.
92112, 107345). The plaintiffs appeal the judgment regarding
the nurse defendants.

In an opinion by Justice BRICKLEY, joined by Chief Justice
RILEY and Justices LEVIN, CAVANAGH, and ARCHER, the Su-
preme Court held:

The alleged negligent acts or omissions of the nurses were
ministerial, and thus not protected under the governmental
immunity act. The allegations should have survived the defen-
dants' motion for summary disposition.

1. Under Ross v Consumers Power Co (On Rehearing), 420
Mich 567 (1984), lower-level government employees and agents
are immune from liability where, during the course of their
employment, they act, or reasonably believe they are acting,
within the scope of their authority and in good faith, and
perform discretionary, as opposed to ministerial, acts. The
performance of ministerial acts may involve some minor deci-
sion making, but not the significant deliberation and judgment
characteristic of discretionary acts. Courts must examine the

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
§ 111.
See the Index to Annotations under Governmemtal Immunity or
Privilege.

content of specific acts and determine whether they involve significant decision making or, as in the case of the implementation or execution of a decision already made, little or no decision making.

2. Although the application of the ministerial-discretionary test is technically a legal question, resolution of the question requires a detailed factual analysis of the conduct at issue. In this case, once the decision was made to insert an endotracheal tube, the maintenance of the airway, including choosing catheters, monitoring breathing sounds, and completion of the nursing plan, became ministerial-operational acts, involving only minor decision making and, thus, were not shielded by governmental immunity.

Justice BOYLE concurred in the result only.

Reversed and remanded.

Justice GRIFFIN took no part in the decision of this case.

177 Mich App 626; 442 NW2d 745 (1989) reversed.

GOVERNMENTAL IMMUNITY — MINISTERIAL ACTS — MINOR DECISION MAKING.

Medical decisions of lower-level governmental employees made during the course of their employment and within the scope of their authority which do not involve a wide latitude of choice with respect to acting or failing to act are ministerial acts and are not immune from liability (MCL 691.1401 *et seq.*; MSA 3.996[101] *et seq.*).

*Sumpter & Perry, P.C.* (by *Thomas E. McDonald*), for the plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*) for the defendants.

BRICKLEY, J. Seven-year-old Jason Green entered Berrien General Hospital as an inpatient on December 26, 1984, and died less than forty-eight hours later. His parents, plaintiffs in this action, filed a wrongful death action against the hospital and Jason's attending nurses, defendants Hardy and Dennis. The trial court granted summary disposition for the defendants, and the Court of Appeals affirmed, holding that governmental im-

munity barred plaintiffs' cause of action.[1] Plaintiffs appeal only with regard to the immunity of the defendant nurses.

This case requires us to revisit the test of governmental immunity for lower-level governmental employees established in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 634; 363 NW2d 641 (1984). Under the three-pronged test articulated in *Ross*, lower-level government employees and agents are immune when they are:

> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> 2) acting in good faith; and
> 3) performing discretionary, as opposed to ministerial acts. [*Id.*, pp 633-634.][2]

The plaintiffs have conceded that the defendants' conduct occurred during the course of their employment and that the defendants acted in good faith. The only question presented therefore is whether the alleged negligent acts and omissions of the defendants comprised discretionary or ministerial acts. We hold that the Court of Appeals erred in affirming the summary disposition for the defendant nurses and remand to the trial court for further proceedings.

I

The plaintiffs have alleged that the defendants committed medical malpractice which resulted in

---

[1] *Green v Comstock*, 177 Mich App 626; 442 NW2d 745 (1989).

[2] The Legislature has since amended the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* The test under the act now is not whether the conduct of the employee is discretionary or ministerial, but whether the employee's conduct amounts to "gross negligence." 1986 PA 175, § 7(2)(c).

the untimely death of their son, Jason Green. The procedural posture of this case on summary disposition requires us to accept as true the allegations in plaintiffs' complaint, and to analyze the legal sufficiency of the allegations in light of defendants' affirmative defense of governmental employee immunity.

Plaintiffs contend that Jason experienced breathing difficulties on December 26, 1984. They sought the medical advice of Dr. Barton Comstock at the Southwestern Medical Clinic.[3] Comstock examined Jason and personally admitted him to Berrien General Hospital that day. Upon arrival at the hospital, Jason's symptoms included shortness of breath, harsh respiratory sounds indicating pulmonary obstruction (stridor), blueness of skin color (cyanosis), pharyngeal swelling, and an anxious and irritable demeanor. Dr. Comstock treated Jason by placing an endotracheal tube in the boy's airway, and inserting an intravenous line for fluids and antibiotics. Hospital personnel subsequently admitted Jason as an inpatient to the hospital's pediatric division, placed the boy in wrist restraints, and repeatedly administered sedatives to him.

The depositions and affidavits[4] of the defendants indicate that Nurse Hardy assumed responsibility for Jason's care from approximately 5:30 P.M. to 11:00 P.M. on December 26. Hardy testified that she monitored Jason's breathing patterns during her shift and heard sounds indicating the presence of fluids in Jason's lungs. She testified, however,

[3] The plaintiffs ultimately obtained a monetary settlement from Dr. Comstock and the Southwestern Clinic.

[4] When a defendant moves for summary disposition pursuant to governmental immunity, MCR 2.116(G)(5) requires courts to consider "affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties . . . ."

that she did not suction the endotracheal tube placed to maintain Jason's airway during her five-hour shift.

By the time Nurse Dennis came on duty at approximately 11:00 P.M., Jason's skin had become discolored, and he had difficulty breathing. Dennis testified that an obstruction of mucous blocked Jason's endotracheal tube. Nurse Dennis attempted without success to suction Jason's endotracheal tube with a number 10 catheter. She called the attending emergency room physician for assistance, and he ultimately succeeded in removing the tube's obstruction. The plaintiffs infer from these facts that the obstruction had resulted from the prior failure of Nurse Hardy to suction the tube during her shift.

Dennis testified that she suctioned the tube thereafter on a few occasions during the early morning of December 27. She stated that she initially used number 10 catheters and, upon expending her supply of these, resorted to the use of number 8 catheters.[5] Dennis subsequently explained that in her opinion number 10 and number 8 catheters could be used interchangeably to obtain identical results for clearing an endotracheal tube. However, the plaintiffs, who remained at Jason's bedside throughout the night, noticed a difference in the catheters and at some point expressed concern regarding Dennis' use of number 8 catheters.

Plaintiffs allege that at approximately 4:30 A.M. Jason again experienced breathing difficulties. The plaintiffs infer from the facts that the use of the smaller, less rigid number 8 catheters had increased the obstruction of Jason's endotracheal tube. Dennis apparently failed to maintain Jason's

---

[5] Number 10 catheters are apparently larger than number 8 catheters.

airway through suctioning with number 8 cathe-
ters. At 4:45 A.M., Dennis again summoned the
attending emergency room physician. His attempt
to restore Jason's airway also failed, and as a
result, plaintiffs allege that Jason stopped breath-
ing and suffered a heart attack.

Plaintiffs allege that Dr. Comstock arrived at
the ward at approximately 5:30 A.M. and removed
Jason's endotracheal tube, which plaintiffs submit
had now become completely plugged by mucous.
Comstock reintubated Jason and restored sponta-
neous heartbeats. However, Jason apparently
never resumed breathing on his own and died at
10:48 A.M. after transfer to Bronson Hospital in
Kalamazoo.

Plaintiffs commenced the instant lawsuit, and
alleged in their second amended complaint that
defendants Hardy and Dennis breached their duty
to care for Jason by failing: 1) to observe and chart
breathing sounds, 2) to suction the endotracheal
tube as needed to maintain Jason's airway, 3) to
have available the appropriate size catheters for
suctioning, and 4) to properly complete a specific
nursing plan for Jason's care consistent with
maintaining his airway.[6]

The defendants answered these allegations with
affidavits contending that each of the specific acts
of alleged misconduct by nurses Hardy and Dennis
comprised discretionary acts, entitling the defen-
dants to immunity under the test articulated in
*Ross v Consumers Power Co, supra.* The defen-
dants moved for summary disposition pursuant to
the governmental immunity statute, under MCR

---

[6] Plaintiffs' complaint also alleged that the defendant nurses failed
to question orders to administer sedatives to Jason and failed to raise
the issue of performing a blood gas analysis. It appears from plain-
tiffs' brief that these claims have been abandoned on appeal.

2.116(C)(7).[7] The trial court granted defendants' motion by order without any analysis. The Court of Appeals, in a split decision, agreed that governmental immunity barred plaintiffs' action.

## II

The Court of Appeals majority noted that the discretionary-ministerial test laid out in *Ross* requires courts to examine the content of specific acts to determine whether the acts involve significant decision making or involve essentially little or no decision making, as in the implementation or execution of an already concluded decision. The *Ross* opinion and subsequent lower court decisions have recognized that while the performance of ministerial acts may involve some minor decision making, they do not require the significant deliberation and judgment characteristic of discretionary acts.

In the context of medical decision making, various panels of the Court of Appeals have asserted three seemingly contradictory propositions. First, panels have asserted that medical decision making is "inherently discretionary."[8] Second, panels have asserted that although "medical decisions are discretionary in nature, the execution of those decisions is a ministerial act."[9] Third, panels have held that the execution of medical decisions may in-

---

[7] MCR 2.116(C)(7) requires pretrial dismissal where a plaintiff's claim "is barred because of . . . immunity granted by law . . . ."

[8] See, e.g., *Fuhrmann v Hattaway,* 109 Mich App 429, 437; 311 NW2d 379 (1981).

[9] *Sayles v Baughman,* 163 Mich App 58, 62; 413 NW2d 730 (1987). See also, e.g., *Tobias v Phelps,* 144 Mich App 272, 281; 375 NW2d 365 (1985) (holding that once "defendants in fact decided that monitoring was necessary to guard against deterioration of the decedent's condition, negligent execution of that decision would fall outside the scope of their individual immunity"); *Brown v Northville Regional Psychiatric Hosp,* 153 Mich App 300, 307; 359 NW2d 18 (1986) (holding that "[o]nce a decision to discharge a patient and the best method to carry

volve a series of discretionary decisions that require a finding of immunity.

The Court of Appeals majority in this case apparently chose to follow this third path of reasoning, as articulated in *Joplin v Univ of Michigan Bd of Regents,* 173 Mich App 149; 433 NW2d 830 (1988). The plaintiff in *Joplin* sued the defendant physicians for negligence in the performance of an abortion. The *Joplin* panel rejected the holdings of prior cases which concluded that the execution of medical decisions comprises a ministerial act. The *Joplin* panel instead held that

> [a] surgeon does not just decide to operate. He or she must also make numerous decisions based on the patient's condition, which may be unexpected or change during the course of surgery. The procedure used to terminate plaintiff's pregnancy required a continuing series of decisions by the defendant doctors who performed it. Therefore, that procedure was discretionary. [*Id.,* p 154.]

Similarly, the Court of Appeals majority compared the instant case to one involving a series of medical decisions requiring considerable discretion, concluding that "the defendant nurses . . . engaged in a series of medical decisions requiring their personal deliberation and judgment." *Green v Comstock,* 177 Mich App 626, 632; 442 NW2d 745 (1989). Accordingly, the Court of Appeals held that the nurses' decisions regarding suctioning the airway, charting breathing sounds, completing a patient care plan, and determining what size catheter to use for suctioning "were discretionary and

it out is made, the decision must be properly executed"); *Stoick v Caro Community Hosp,* 167 Mich App 154, 166; 421 NW2d 611 (1988) (holding that a doctor's failure to admit a patient after determining admission was necessary comprised a ministerial act).

therefore protected under the defense of individual governmental immunity." *Id.*[10]

## III

The discretionary-ministerial test outlined in *Ross* was designed to "afford [lower-level government employees] enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner." *Id.,* p 635. *Ross* did not afford the opportunity to lay down specific examples to determine in specific cases whether the conduct of lower-level employees constitutes "significant" or merely "minor" decision making. Rather, *Ross* broadly described discretionary acts as encompassing more than "quasi-judicial or policy-making authority" and less than "every trivial decision, such as 'the driving of a nail,' which may be involved in performing an activity." *Id.,* p 634.

Admittedly, the difficult cases are those that involve neither clearly momentous policy-making decisions nor patently trivial, routine decisions. In between clearly significant and routine decision making lies a twilight zone of activities which courts applying the *Ross* test can only illuminate by subjecting the factual record and its logical inferences to rigorous scrutiny. Although the application of the ministerial-discretionary test is technically a legal question, resolution of the ques-

---

[10] The dissenting judge on the panel opined that while "there is a certain degree of significant decision making involved in determining [whether to insert an endotracheal tube in a patient] . . . [t]he actual insertion of the tube and maintaining it are ministerial acts." 177 Mich App 634. Accordingly, the dissenter would have held that the failure to suction Jason's tube was not shielded by immunity. Similarly, the dissenter felt "hard pressed to imagine how [the acts of observing and charting breath sounds] can be anything other than ministerial ones." *Id.* The dissenter would have reversed the trial court's grant of summary judgment regarding these allegations.

tion requires a detailed factual analysis of the conduct at issue. In the instant case, our analysis of the record in light of the plaintiffs' allegations leads us to conclude the Court of Appeals erred in affirming the summary disposition.

Plaintiffs' allegation that defendants failed to suction Jason's endotracheal tube as required should have survived summary disposition under the test outlined in *Ross*. Plaintiffs have argued that once a decision had been made to insert an endotracheal tube in Jason, the maintenance of the airway became a ministerial-operational act. The party moving for summary disposition has the burden of demonstrating the legal insufficiency of plaintiffs' allegations, and plaintiffs need not plead facts in avoidance of immunity in suits against governmental employees who perform lower-level responsibilities. *Canon v Thumudo,* 430 Mich 326, 344; 422 NW2d 688 (1988).

The defendants assert in their supporting affidavits that because no doctor's order was issued regarding suctioning Jason's endotracheal tube, they had to rely on professional skill and judgment "in determining if and when to suction the patient's endotracheal tube." We must assume, in the absence of any countervailing evidence, that a requirement existed for defendants to suction an intubated patient. We conclude that the specific act of suctioning comprised a ministerial act involving only minor decision making. The failure to suction or the negligent performance of the act is not therefore shielded by immunity. The deposition and testimony of Nurse Dennis indicates that standard maintenance of an endotracheal tube required suctioning on a regular basis to insure that the tube remained clear. Similarly, the hospital's written procedure on endotracheal suctioning supports an inference that suctioning constituted

an established, routine procedure requiring only minor decision making. The record therefore strongly indicates that the bulk of decision making required for the maintenance of an intubated patient involved, at most, decision making regarding how frequently to suction consistent with considerations of patient rest and comfort. In our view, the question how frequently to suction reflected the implementation of a prior discretionary decision to intubate a patient. Thus, the conduct involved minor decision making but did not require the exercise of significant decision making.

Plaintiffs further alleged that defendants failed to have available the proper size catheters for suctioning Jason's endotracheal tube. Defendant Dennis testified that she used number 8 catheters after she expended her supply of number 10 catheters. The defendant's affidavits contend that the use of catheters required them to "assess the size of the patient's endotracheal tube, determine the size range of suction catheters appropriate for use in suctioning the identified size endotracheal tube, and then make a decision as to which size catheter in the appropriate range of sizes would function satisfactorily . . . ." However, Dennis also testified unequivocally in her deposition that it made no practical difference regarding which size catheter she used. It can be properly inferred, as plaintiffs argue, that the defendants' admission that it made no difference which size catheter to employ for suctioning indicates that the choice of catheters did not involve significant decision making. If, as defendant asserted, a number 8 catheter worked as effectively as a number 10 catheter, the choice of either would not involve considerable deliberation and judgment from a medical standpoint. Ministerial acts which a governmental employee performs negligently are not shielded by immunity

under *Ross*. Plaintiffs must therefore also prevail on the summary disposition on this allegation.

Plaintiffs also alleged that the appropriate standard of health care required defendants to observe and chart Jason's breathing sounds. Defendants testified that they did in fact monitor Jason's breathing sounds. However, defendants have provided no persuasive facts or arguments that these acts necessarily involve significant deliberation and judgment. Rather, it would seem, and there is no information to the contrary, that monitoring breathing sounds falls into a category of routine, minor decision making characteristic of ministerial-operational conduct. Whether defendants failed to carry out this task or did so negligently is not protected by immunity. Accordingly, plaintiffs' allegation in this regard should have survived a motion for summary disposition challenging the legal sufficiency of the allegation.

Finally, plaintiffs alleged that the defendants failed to properly complete a specific nursing plan consistent with maintaining Jason's airway. The defendants' affidavits concede that "a nursing plan is required by all applicable standards of care," but contend that "the extent and detail in which this plan is recorded necessarily requires the nurse to assess the time available [for detailing the plan] in light of the immediate needs and demands of [patients in her care]." The completion of a nursing plan in the abstract would appear to involve significant decision making, personal judgment, and deliberation.

We do not deal here in the abstract, however, but in the concrete record before us. It can be inferred from the testimony of Nurse Dennis that in her view, "nurses in most institutions find [writing patient care plans] sometimes less significant than doing the nursing care for patients

. . . ." This statement permits the inference that the completion of nursing care plans is a routine administrative task requiring little deliberation. Furthermore, the extreme brevity of the nursing plan actually completed for Jason mitigates against a finding of a discretionary-decisional act. Defendants concede that completing a plan was required and not discretionary, and that the implementation of this requirement appears to have involved neither wide latitude of choice nor great deliberation. The patient care plan completed in this case comprised a one-page standard form with four columns entitled, "Problem/Need," "Plan of Action," "Expected Outcome," and "Date Resolved." Of these four headings, the "plan of action" column appears to be the only category requiring significant decision making. However, the plan of action indicated contained only four entries—to restrict the tube from pulling out, to maintain oxygen in the tube according to standard procedure, to maintain the nasal tube, and to administer antibiotics according to a doctor's orders. The plan completed does not appear to reflect significant decision making, and therefore plaintiffs' allegation should have survived summary disposition.

## IV

Although the execution of a medical decision may at times entail a series of medical decisions requiring personal deliberation and judgment, *Ross* still requires each of those decisions to entail significant decision making. In the instant case, the defendants made a series of decisions, but because wide latitude of choice did not exist in respect to acting or failing to act, these decisions are most properly characterized as ministerial.

Even ministerial acts require minor decision making and involve some measure of personal deliberation and judgment. However, the test articulated in *Ross* does not shield such decisions from immunity. The well-pled allegations of the plaintiffs in this case accordingly must survive summary disposition on the basis of governmental immunity.

Plaintiffs have additionally argued before us that the trial court erred in ruling that Joint Commission on Accreditation of Hospitals Deficiency Statements sought by the plaintiffs from Berrien General Hospital through discovery were privileged under Michigan's peer review statute, MCL 333.21515; MSA 14.15(21515). The Court of Appeals did not rule on this issue because the plaintiffs failed to appeal a prior grant of summary disposition for the hospital. The hospital is no longer a party to this appeal, and, accordingly, we agree with the Court of Appeals that the issue is not properly before us.

Reversed in part and remanded for further proceedings.

RILEY, C.J., and LEVIN, CAVANAGH, and ARCHER, JJ., concurred with BRICKLEY, J.

BOYLE, J., concurred in the result only.

GRIFFIN, J., took no part in the decision of this case.