WADE v DEPARTMENT OF CORRECTIONS

Docket No. 88656. Argued November 6, 1991 (Calendar No. 4). Decided March 23, 1992. Dissenting opinion by LEVIN, J., filed March 24, 1992.

Gerald Wade, an inmate of the Lakeland Correctional Facility, brought an action under the public building exception to governmental immunity in the Court of Claims against the Department of Corrections, alleging that he slipped on a foreign substance and fractured his kneecap because of the department's failure to repair and maintain the facility. The court, Michael G. Harrison, J., granted summary disposition for the defendant, finding that an accumulation of grease or oil on the floor did not amount to a defect of the building itself. The Court of Appeals, MURPHY, P.J., and CAVANAGH, J. (MACKENZIE, J., dissenting), reversed, finding little distinction between dangerous conditions caused by a structural defect in the floor and a floor covered with an accumulation of oil or grease (Docket No. 113501). The defendant appeals.

In an opinion by Justice RILEY, joined by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, GRIFFIN, and MALLETT, the Supreme Court held:

The public building exception is to be narrowly construed and does not encompass claims of negligent janitorial care.

1. MCL 691.1406; MSA 3.996(106), the public building exception to governmental immunity, imposes a duty to maintain safe public buildings, but not necessarily safety in public buildings. The duty to repair and maintain relates to the structural condition of the premises, and a governmental entity engaged in a governmental function is open to liability only where the injury results from a dangerous or defective condition of a building.

2. The public building exception is limited to injuries occa-

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 294, 299.
See the Index to Annotations under Buildings; Governmental Immunity or Privilege; Janitors and Caretakers; Premises Liability; Public Lands and Property.

sioned by a dangerous or defective physical condition of the building itself. Transitory conditions are not contemplated by the statute because they are not related to the permanent structure or physical integrity of the building. As long as the injury occurs as a result of a structural condition of the building, it does not matter whether the condition arose because of improper design, faulty construction, or absence of safety devices. In this case, the transitory condition was not caused by a dangerous or defective condition of the building itself. Thus, the plaintiff has alleged nothing more than negligent janitorial care, which is insufficient to bring this case within the public building exception to governmental immunity. A governmental entity is not held to the same standards as private landowners. Mere negligence by a governmental agency does not trigger liability.

Reversed.

Justice LEVIN, dissenting, stated that the majority's construction of the governmental immunity statute ignores that there are two prongs of the building exception: liability for failure by a governmental agency to repair and maintain a public building under its supervision, and liability for damage resulting from a dangerous or defective condition of a public building. Liability for failure to repair and maintain may obtain without regard to whether that failure also constitutes a dangerous or defective condition.

There is no justification for limiting by judicial construction the second prong, dangerous or defective condition, to exclude a dangerous or defective condition that is transitory, to include only a dangerous or defective condition that relates to the permanent structure or physical integrity of the building, or to a dangerous or defective condition caused by a fault of a governmental agency more egregious than mere negligence. Such concepts are consistent with neither a literal reading nor a purpose of the building exception.

While the majority cites *Reardon v Dep't of Mental Health,* 430 Mich 398 (1988), as controlling, it is not clear on what basis. The holding in *Reardon* is not pertinent to, or controlling of, the correct resolution of the issue presented for the first time in this case. Likewise, the issues raised in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567 (1984), also relied upon by the majority, did not involve the building exception.

182 Mich App 519; 453 NW2d 683 (1990) reversed.

1. GOVERNMENTAL IMMUNITY — PUBLIC BUILDING EXCEPTION — NEGLIGENT JANITORIAL CARE.

The public building exception to the governmental immunity act

is to be narrowly construed and does not encompass claims of negligent janitorial care (MCL 691.1406; MSA 3.996[106]).

2. Governmental Immunity — Public Building Exception — Negligent Janitorial Care.

The public building exception to governmental immunity imposes a duty on a governmental entity to maintain safe public buildings, but not necessarily safety in public buildings; the duty to repair and maintain relates to the structural condition of the premises; a governmental entity engaged in a governmental function is open to liability only where the injury results from a dangerous or defective condition of a building; a building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices, but not because of negligent janitorial care (MCL 691.1406; MSA 3.996[106]).

*James T. Miller* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Leonard Malinowski* and *Thomas C. Nelson,* Assistant Attorneys General, for the defendant.

Riley, J. We granted leave to appeal to determine whether the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106),[1] applies to a slip and fall injury occa-

---

[1] The public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106), provides in pertinent part:

Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place.

sioned by an accumulation of grease or oil on a hallway floor.[2] The Court of Appeals held that the exception was applicable to these facts and reversed the trial court's grant of summary disposition in the defendant's favor.[3] We disagree with the findings of the Court of Appeals majority, and hold that the transitory condition was not caused by a dangerous or defective condition of the building itself, thus the public building exception does not apply.

### I. FACTS AND PROCEDURAL HISTORY

#### A

Plaintiff Gerald Wade was a prison inmate at the Lakeland Correctional Facility in Coldwater, Michigan. On January 25, 1987, plaintiff slipped on some foreign substance[4] and fractured his kneecap. Plaintiff sued the State of Michigan, Department of Corrections, under the public building exception to governmental immunity[5] on the basis of the theory that it failed to repair and maintain the Lakeland facility, a public building.

In the Court of Claims, defendant moved for summary disposition pursuant to the governmental immunity statute, MCL 691.1407; MSA 3.996(107).[6] The court granted defendant's motion on the basis of its finding that an accumulation of

---

[2] 437 Mich 972 (1991).

[3] 182 Mich App 519; 453 NW2d 683 (1990).

[4] Paragraph 8 of plaintiff's complaint alleges that the slip and fall was caused by an accumulation of "oil, grease, water and food" on the hallway floor of the correctional facility, and paragraph 10 alleges defendant allowed a defective or dangerous condition to exist, which consisted of "an accumulation of grease, oil, water, food or other slippery matter . . . ."

[5] MCL 691.1406; MSA 3.996(106), n 1 *supra.*

[6] The statute providing for governmental immunity from tort liability, MCL 691.1407; MSA 3.996(107), provides in pertinent part:

grease or oil on the floor did not amount to a defect of the building itself.

The Court of Appeals reversed, finding little distinction between dangerous conditions caused by a structural defect in the floor and a floor covered with an accumulation of oil or grease. *Wade v Dep't of Corrections,* 182 Mich App 519, 525; 453 NW2d 683 (1990). The majority rejected the statutory interpretation, which differentiates between risks of injury on the basis of what occasioned the risk. *Id.* Judge MACKENZIE dissented, on the basis of her belief that the public building exception is confined to the duty of preserving the structural integrity of a public building.

B

Although not specified in the record, the trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8). MCR 2.116(C)(7) tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties. MCR 2.116(G)(5); *Green v Berrien General Hosp Auxiliary, Inc,* 437 Mich 1, 4, n 4; 464 NW2d 703 (1990). MCR 2.116(C)(8), failure to state a claim upon which relief can be granted, tests the legal sufficiency of the complaint and allows consideration of only the pleadings. MCR 2.116(G)(5); *Scameheorn v Bucks,* 167 Mich App 302, 306; 421 NW2d 918 (1988). Under both subrules, all well-pleaded allegations are accepted

(1) Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

as true, and construed most favorably to the non-moving party. *Scameheorn, supra* at 306; *Haywood v Fowler,* 190 Mich App 253, 256; 475 NW2d 458 (1991). A court may only grant a motion pursuant to MCR 2.116(C)(8) where the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Scameheorn, supra* at 306.

Immunity granted by law, such as governmental immunity, pursuant to MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, is an affirmative defense and requires that the defense be stated in the party's responsive pleading. MCR 2.111(F)(3)(a). *Leite v Dow Chemical Co,* 439 Mich 920 (1992). In order to survive a motion for summary disposition, the plaintiff must, however, allege facts justifying application of an exception to governmental immunity. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 621, n 34; 363 NW2d 641 (1984); *Gibson v Grand Rapids,* 162 Mich App 100, 103; 412 NW2d 658 (1987).

## II. REVIEW OF MICHIGAN CASE LAW

In *Reardon v Dep't of Mental Health,* 430 Mich 398; 424 NW2d 248 (1988), this Court examined the scope of the public building exception to governmental immunity. MCL 691.1406; MSA 3.996(106). We held that the intent of the Legislature in enacting the public building exception was to "impose a duty to maintain safe public buildings, but not necessarily safety *in* public buildings." (Emphasis added.) *Reardon, supra* at 417. The duty to repair and maintain relates to the structural condition of the premises, and a government engaged in a governmental function is open to liability only where the injury results from a dangerous or defective condition *of* a building. *Id.*

Although factually distinguishable from the instant case, the holding in *Reardon* delineating the public building exception is controlling.

In *Reardon*, a nursing student was assaulted in her dormitory. She alleged that the room, and therefore the building, was unsafe and defective because of the number of master keys in circulation among the employees. In *Schafer v Ethridge*, 430 Mich 398; 424 NW2d 248 (1988), the companion case of *Reardon*, a severely mentally retarded resident of a center for developmental disabilities was impregnated while staying in the acute care wing. The complaint alleged that the layout of the wing created a dangerous condition allowing an assault to occur.

This Court rejected the application of the public building exception to these facts on the grounds that no evidence was presented that a condition *of* the building contributed to the assaults or posed a danger to the plaintiffs. *Reardon, supra* at 417.

In *Reardon*, we discussed the statutory genesis of the public building exception. In response to the judicial abrogation of governmental immunity for municipalities in *Williams v Detroit*, 364 Mich 231; 111 NW2d 1 (1961), in 1964 the Legislature passed Public Act 170.[7] The purpose of this act was to restore governmental immunity to nonsovereign agencies, and to provide for uniform treatment of governmental entities when engaged in governmental functions.[8] See *Reardon, supra* at 408.

---

[7] In *Maki v East Tawas*, 385 Mich 151; 188 NW2d 593 (1971), the Court held 1964 PA 170 to be unconstitutional as violative of the Title-Object Clause of Const 1963, art 4, § 24. In response, the Legislature amended the title of the act, but essentially maintained the body of the act.

[8] The title of the act, as amended by 1970 PA 155 and 1978 PA 141, states that it is

An act to make uniform the liability of municipal corporations,

Earlier constructions of the governmental immunity act by this Court indicated that with the expansion of governmental activity in recent years, services provided by governmental agencies are not essentially governmental in nature. *Pichette v Manistique Public Schools*, 403 Mich 268, 279; 269 NW2d 143 (1978). We then found that public policy required a narrow construction of the term "governmental function," and imposed a broad duty on the government to protect the public from injury by maintaining safe public places. *Id.* at 285. A "narrow" interpretation of the public building exception which limited application of the exception to the specific physical structure of the building itself was explicitly rejected. *Tilford v Wayne Co General Hosp*, 403 Mich 293, 299; 269 NW2d 153 (1978). The decisions in *Lockaby v Wayne Co*, 406 Mich 65, 77; 276 NW2d 1 (1979), and *Bush v Oscoda Area Schools*, 405 Mich 716, 731; 275 NW2d 268 (1979), also reflect narrow interpretations of governmental function and governmental immunity. In *Bush,* this Court rejected the defendant's contention that the injury must result from dangerous or defective conditions caused by inadequate or negligent repairs or maintenance, and found that "a building may be dangerous or defective because of improper design,

political subdivisions, and the state, its agencies and departments, when engaged in the exercise or discharge of a governmental function, for injuries to property and persons; to define and limit this liability; to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against loss arising out of this liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; to provide for the legal defense of public officers and employees; to provide for reimbursement of public officers and employees for certain legal expenses; and to repeal certain acts and parts of acts.

faulty construction or the absence of safety devices." *Id.* at 730.

In *Ross, supra,* the Court reconsidered the scope of the governmental immunity statute. Our purpose in interpreting the immunity act was to create a cohesive, uniform, and workable set of rules to define an injured party's rights, and the governmental entity's liability. *Id.* at 596. We concluded that the intent of the act was to bring into uniformity the liability for state and nonsovereign governmental agencies. *Id.* at 608.

The decision in *Ross* settled prior inconsistencies in governmental immunity jurisprudence by finding that the heart of the act, § 7, provides for broad immunity from tort liability for governmental agencies engaged in governmental functions. *Ross, supra* at 595. The language of § 7 is "in the broadest possible language," and the term "governmental function" was likewise to be construed broadly. *Id.* at 618. From this broad grant of immunity, the Court recognized four narrow statutory exceptions, including the public building exception.[9] The more recent decision in *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223, 245; 393 NW2d 847 (1986), also recognized that exceptions to governmental immunity are to be narrowly construed.[10]

Subsequent Court of Appeals decisions, however, continued to interpret the public building exception broadly. In *Davis v Detroit,* 149 Mich App 249, 262; 386 NW2d 169 (1986), the Court found that the Legislature intended to impose a "broad

---

[9] The other exceptions are not applicable to the present case. They concern maintenance of public highways, MCL 691.1402; MSA 3.996(102); operation of a government-owned motor vehicle by an officer or agent, MCL 691.1405; MSA 3.996(105); and performance of proprietary functions by government entities, MCL 691.1413; MSA 3.996(113).

[10] See also *Jolly v St Clair,* 428 Mich 860; 400 NW2d 597 (1987).

duty" on governmental agencies to maintain safe
buildings. And, in *Ray v Dep't of Social Services,*
156 Mich App 55, 63; 401 NW2d 307 (1986), the
Court discussed the broad application of the public
building exception, stating that "it was the intent
of the Legislature to apply the same standard of
care and duty as would be applied to a department
store or supermarket or a privately owned place of
business open to the public." The only differences
between private tort liability and that of govern-
mental agencies noted by the Court in *Ray* were
the notice and knowledge requirements in the
public building exception statute. *Id.*

Various Court of Appeals decisions since our
1988 decision in *Reardon, supra,* have recognized
that the public building exception is now to be
interpreted more narrowly, and is limited to dan-
gers actually presented by the building itself.
"[T]he scope of this [public building] exception has
been narrowed considerably in the time since *Pi-
chette* and *Tilford.*" *Puroll v Madison Heights,* 187
Mich App 672, 673; 468 NW2d 52 (1990). See
*Merritt v Dep't of Social Services,* 184 Mich App
522, 523; 459 NW2d 10 (1989) (an accumulation of
ice on a parking lot maintained by the defendant
was not within the public building exception; the
scope of the exception was narrowed since *Tilford*);
*Dew v Livonia,* 180 Mich App 676, 679; 447 NW2d
764 (1989) (the intent of the Legislature was to
apply the public building exception to " 'dangers
actually presented by the building itself,' and not
to all injuries incurred inside or adjacent to a
public building"); *Wing v Detroit,* 178 Mich App
628, 631; 444 NW2d 539 (1989) (the plaintiff's
claim regarding her slip and fall at the Detroit Zoo
requires an expansion of pre-*Ross* decisions which
is precluded by *Reardon*). See also *Abrams v
Schoolcraft Community College,* 178 Mich App

668; 444 NW2d 533 (1989), *Eberhard v St Johns Public Schools,* 189 Mich App 466; 473 NW2d 745 (1991), *Hall v Detroit Bd of Ed,* 186 Mich App 469; 465 NW2d 12 (1990), and *Hemphill v Michigan,* 173 Mich App 335; 433 NW2d 826 (1988).

The exception has been held applicable where the claim alleges an injury occasioned by a defective or dangerous condition of the building itself. *Williamson v Dep't of Mental Health,* 176 Mich App 752, 758; 440 NW2d 97 (1989) (a mentally retarded resident drowned in the bath due to an improper design of the shower and bath).

### III. ANALYSIS

Having reconsidered the scope of the governmental immunity statute, this Court remains persuaded that the legislative intent regarding application of the public building exception statute is limited to injuries occasioned by a "dangerous or defective physical condition of the building itself." The statutory scheme does not contemplate transitory conditions because they are not related to the permanent structure or physical integrity of the building. *Reardon, supra* at 409. In *Reardon,* we recognized the holding in *Bush* with approval, reasoning that as long as the injury is presented by a structural condition of the building, it does not matter whether the condition arose because of improper design, faulty construction, or the absence of safety devices. *Id.* at 410. Our decisions in *Pichette, Tilford, Lockaby,* and *Bush,* are in harmony with *Reardon,* because these decisions preceded our resolution in *Ross,* which more broadly defined the scope of governmental functions and immunity. *Reardon, supra* at 415.

Plaintiff maintains that *Reardon* does not apply in this case because the injuries to the plaintiffs in *Reardon* were caused by the acts of third parties.

We disagree. We find no substantive difference between acts of third parties which directly or negligently cause injury to the plaintiff from the facts involved in the present case. The significant, and we believe determining, aspect of both situations is that the dangerous condition was not caused by a dangerous or defective condition of the building itself. We agree with the reasoning of dissenting Judge MACKENZIE who found in this case: "plaintiff has alleged nothing more than negligent janitorial care. That is not enough to bring this case within the public building exception to governmental immunity." *Wade, supra* at 527.

In contesting defendant's motion for summary disposition, plaintiff asserted that pursuant to the public building exception, he was obligated to establish the source of the substance on the floor in order to prove that the accumulation was the result of some building defect. Plaintiff argues that since no source was alleged in the complaint or the prisoner's accident report, he should be allowed to develop facts to show that a building defect caused the accumulation.[11] The trial court, after reviewing only pleadings, found that the mere accumulation of grease or oil did not amount to a defect in the building itself, and therefore, plaintiff did not properly establish facts in his complaint that would have avoided governmental immunity.

The Court of Appeals reversed and remanded on the grounds that the physical condition of the floor was a physical condition of the building itself. The Court stressed that the result, a slippery floor, is the same regardless of whether the dangerous condition is caused by an accumulation of oil or

[11] Plaintiff did not allege that the dangerous condition arose out of a dangerous or defective condition of the building itself, hence we do not address that issue in this opinion.

grease rather than a defect in the building itself.[12] The Court relied on the pre-*Reardon* case of *Ray, supra.* In light of our holding in *Reardon,* we find the interpretation of the public building exception in *Ray* overly broad.

In the instant case, the Court of Appeals opined that *Ray,* was still good law after *Reardon.* It rejected an interpretation of *Reardon* that would find the public building exception inapplicable to these facts because the condition was not part of the building itself.

We do not agree. The assertion in *Ray* that a governmental entity is held to the same standards as private landowners, *Ray, supra* at 63, is not consistent with the finding in *Ross* of a clear legislative judgment to treat public and private tortfeasors differently. *Ross, supra* at 618. Mere negligence by a governmental agency does not trigger liability.

### IV. CONCLUSION

In sum, we conclude that the public building exception is to be narrowly construed, and does not encompass claims of negligent janitorial care. A spill on the floor does not become part of the building itself by virtue of the risk of injury it may create for the plaintiff. Moreover, we do not believe the Legislature intended "dangerous or defective condition of a public building" to refer to such transitory conditions. The use of the ninety-day period for conclusively presuming knowledge, as well as the reference to time to "repair" the

---

[12] See *Henkey v Grand Rapids,* 185 Mich App 56, 57; 460 NW2d 271 (1990) ("The pertinent inquiry should not concern the genesis of the danger," but rather the knowledge of the danger by the governmental entity).

defect, reinforces our belief that the public build-
ing exception does not encompass transitory condi-
tions or ordinary daily maintenance.

In the present case, plaintiff's claim alleges no
more than mere negligence: that grease, oil, food,
and water were allowed to accumulate on the
floor. This accumulation was the transitory condi-
tion which caused the plaintiff's injury. Further-
more, no defect of the public building itself was
pleaded. We find, therefore, that plaintiff failed to
state a claim upon which relief could be granted,
and the trial court properly granted defendant's
motion for summary disposition.

We therefore reverse the decision of the Court of
Appeals.

CAVANAGH, C.J., and BRICKLEY, BOYLE, GRIFFIN,
and MALLETT, JJ., concurred with RILEY, J.

The following opinion was filed with the Clerk of the Supreme
Court on March 24, 1992, after the release of the opinion of the Court
on March 23, 1992—REPORTER.

LEVIN, J. (*dissenting*). The question presented, I
agree with the majority, is whether the public
building exception to governmental immunity[1] ap-

[1] Governmental agencies have the obligation to repair and
maintain public buildings under their control when open for
use by members of the public. Governmental agencies are liable
for bodily injury and property damage resulting from a danger-
ous or defective condition of a public building if the governmen-
tal agency had actual or constructive knowledge of the defect
and, for a reasonable time after acquiring knowledge, failed to
remedy the condition or to take action reasonably necessary to
protect the public against the condition. Knowledge of the
dangerous and defective condition of the public building and
time to repair the same shall be conclusively presumed when
such defect existed so as to be readily apparent to an ordinary
observant person for a period of 90 days or longer before the
injury took place. [MCL 691.1406; MSA 3.996(106).]

plies to a slip and fall injury occasioned by an accumulation of grease or oil[2] on a hallway floor.[3]

The circuit judge granted summary disposition, finding that Wade did not allege a "defect in the building itself."[4] The Court of Appeals reversed, stating that a governmental agency "has a statutory duty to *maintain* its public buildings so that the members of the public who are on public premises are protected from dangerous and defective conditions of the building."[5] (Emphasis in original.)

The majority reverses the decision of the Court of Appeals stating that "the transitory condition was not caused by a dangerous or defective condition *of the building itself,* thus the public building exception does not apply."[6] The majority elaborates that "[t]he statutory scheme does not contemplate transitory conditions because they are not related to the permanent structure or physical integrity of the building."[7] The majority would further limit the building exception, stating "[m]ere negligence by a governmental agency does not trigger liability."[8]

---

[2] Or other possible substance that plaintiff's proofs, were this case to be remanded for trial, might tend to show.

[3] *Ante,* pp 160-161. The order granting leave to appeal did not, contrary to an intimation of the majority, state an issue. 437 Mich 972 (1991).

[4] See *Wade v Dep't of Corrections,* 182 Mich App 519, 521; 453 NW2d 683 (1990), where the bench opinion of the circuit judge is set forth.

[5] *Id.,* p 525.

[6] *Ante,* p 161 (emphasis added).
The majority similarly states "no defect of the building itself was pleaded." *Id.,* p 171.

[7] *Id.,* p 168.

[8] *Id.,* p 170.

I

I would affirm the Court of Appeals, and would remand for trial.

A

The majority's construction ignores that there are two prongs of the building exception. The building exception provides that a governmental agency is obliged to "repair *and maintain*" a public building under its supervision. (Emphasis added.) That obligation, the first stated prong of the building exception, is specifically and separately stated in the sentence immediately preceding the sentence stating the second prong, that a governmental agency is subject to liability for damage resulting from a "dangerous or defective condition" of a public building.[9]

A governmental agency is thus subject to liability under the building exception where it has failed to repair *and maintain* a public building, without regard to whether the failure to repair and maintain also constitutes a "dangerous or defective condition." This Court, in *Reardon v Dep't of Mental Health,* 430 Mich 398; 424 NW2d 248 (1988), otherwise regarded by the majority as "controlling,"[10] recognized that the building exception states two separate obligations: "The *first sentence* [of the building exception] imposes upon governmental agencies the duty to 'repair and maintain public buildings under their control . . . .' "[11] "*In addition, the second sentence* of the exception imposes liability on governmental agencies for injuries 'resulting from a dangerous or

---

[9] See n 1 for text.

[10] *Ante,* p 164.

[11] *Reardon, supra,* p 409 (emphasis added). See n 18 for full text.

defective condition *of* a public building . . . .' "
(Emphasis supplied in *Reardon*.)[12]

### B

Nor is there justification for the majority's conclusion that the "dangerous or defective condition" prong of the building exception should be limited by judicial construction

—to exclude a dangerous or defective condition that is "transitory,"[13]

—to include only a dangerous or defective condition that relates to the "permanent structure or physical integrity of the building,"[14] or

—to a dangerous or defective condition caused by a fault of a governmental agency more egregious than "[m]ere negligence."[15]

The words "transitory" and "permanent structure or physical integrity of the building" and words establishing a standard of fault more egregious than "mere negligence" do not appear in the building exception. Nor are such words, or the concepts they convey, so today added by the majority by judicial construction,[16] consistent with either a literal reading of, or a purpose of, the building exception, both identified by the majority and supported in the history of the governmental tort liability act or in the development, in Michigan and elsewhere, of statutory delineation of the

---

[12] *Id.*, p 410 (first emphasis added). See n 18 for full text.

[13] *Ante,* p 161.

[14] *Id.*, p 168.

[15] *Id.*, p 170.

[16] It is unclear which of these alternative judicial formulations is the basis of decision in this case, and thus they all may be regarded as obiter dictum.

scope of governmental immunity and of exceptions providing for governmental liability.

In *Reardon,* this Court said:

> In light of the *historical context* in which the statute was enacted, as well as the *language chosen* by the Legislature, and the generally broad scope of immunity, we hold that the Legislature intended the public building exception to apply in cases where the injury is occasioned by the *physical condition* of the building itself.[17]

"Physical condition" was not limited in *Reardon,* to a condition that relates to the "permanent structure or physical integrity of the building."[18]

C

The majority argues that "use of the ninety-day

---

[17] *Reardon, supra,* pp 412-413 (emphasis added).

[18] In *Reardon, supra,* pp 409-410, this Court said:

> The first sentence [of the building exception] imposes upon governmental agencies the duty to "repair and maintain public buildings under their control . . . ." In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), we held that this duty is not strictly limited to the repair or maintenance of public buildings. Instead, we held that "a building may be dangerous or defective because of *improper design, faulty construction or the absence of safety devices." Id.* at 730. *We reiterate this proposition,* as the holding in *Bush* is entirely consistent with today's conclusion that the injury must be occasioned by the dangerous or defective physical condition of the building itself. As long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices. However, while the public building exception is not strictly limited to failures of repair or maintenance, the Legislature's choice of those terms to define the governmental duty is indicative of its intention regarding the scope of the exception. The duty to repair and maintain a premises clearly relates to the physical condition of the premises.

> In addition, the second sentence of the exception imposes liability on governmental agencies for injuries "resulting from a dangerous or defective condition *of* a public building . . . ." (Emphasis supplied.)

period for conclusively presuming knowledge, as well as the reference to time to 'repair' the defect," supports a belief that the building exception "does not encompass transitory conditions or ordinary daily maintenance."[19] The argument ignores that the statutory requirement that a governmental agency have knowledge of, and reasonable time to remedy, the condition applies in terms only under the second stated prong, "dangerous or defective condition of a public building," and not under the first stated prong, "repair and maintain public buildings," of the building exception. See n 1 for text of the building exception.

The majority's argument also ignores that an injured person might show that the requisite knowledge was in fact acquired, and that there was also a reasonable opportunity to remedy, within minutes or hours, long before the lapse of ninety days when the governmental agency is conclusively deemed to have knowledge and time to repair. An accumulation of grease or oil might be remedied within minutes or hours of the governmental agency acquiring knowledge, and, remedied or unremedied, concerns the "physical condition" of the floor and hence of the building itself.[20]

The majority's statement of this argument additionally ignores that the statute imposes, under the first prong, an obligation to "repair and *maintain,*" not merely an obligation, as stated in the majority opinion, to " 'repair' the defect." The obligation is actually stated in the statute as an obligation to "repair and maintain public buildings under their control." The majority in *Reardon,* quite correctly, read this as meaning an obligation to " 'repair *or* maintain.' "[21]

---

[19] *Ante,* pp 170-171.

[20] See text accompanying ns 17-18.

[21] *Reardon,* p 409 (emphasis added).

D

In the instant case, Wade does not assert that the grease or oil accumulated because of a structural defect.[22] In another case, however, the "transitory" grease or oil might have accumulated in a crevice in the floor or because the floor, as a result of poor design or poor construction, is slanted.

II

The majority relies heavily on *Reardon, supra.* There the plaintiffs sought to recover, under the building exception, for injuries suffered as a result of a sexual assault by an employee of the Department of Mental Health on a nursing student, and for a sexual assault on a mentally retarded resident of a facility operated by the department. The plaintiffs alleged that the absence of a method of securely locking the door of a dormitory room, in one case, and the floor plan of a ward, in the other, constituted "dangerous or defective conditions" of facilities operated by the department.[23]

The Court, in *Reardon,* observed that "the assaults were the result of the act of an intervening party rather than a dangerous or defective condition of the building itself," and stated, and I continue to agree, that "the Legislature intended to impose *a duty to maintain safe public buildings, but not necessarily safety in public buildings*" and

_____

[22] Because this case has not been tried, the cause of the accumulation of oil or grease, whether a structural defect or not, has not been established. Contrary to the assertion of the majority, an injured person is not required to plead with particularity the source of the accumulation.

[23] It does not appear that those lapses were claimed to have constituted a failure to "repair and maintain."

concluded "that the public building exception does not apply *under the facts of these cases.*"[24]

### A

The majority in the instant case states that although *Reardon* is "factually distinguishable from the instant case, the holding in *Reardon* delineating the public building exception is *controlling.*"[25]

It is unclear on what basis the majority concludes that *Reardon* is controlling. I agreed with the dispositions in *Reardon,* read the opinion of the Court as deciding a lawsuit, not as a tour de force, and signed the opinion of the Court. The "holding" in *Reardon* is not even pertinent to, let alone controlling of, the correct resolution of the issue presented for the first time in the instant case.

Courts in other jurisdictions have concluded, as did this Court in *Reardon,* that a governmental agency is not subject to liability for physical assaults under a statutory building exception worded much like this state's building exception, and yet have concluded that a governmental agency is subject to liability for a "transitory" dangerous condition[26]

---

[24] *Reardon, supra,* p 417 (emphasis added).

[25] *Ante,* p 164 (emphasis added).

[26] A Pennsylvania court held that the state was subject to liability, under a statute providing for liability where there is a " 'dangerous condition of Commonwealth real estate,' " where rocks were thrown at motorists from an overpass, because the state had failed to erect protective fencing or barricades that would have prevented the throwing of rocks onto the highway. *Mistecka v Commonwealth,* 46 Pa Commw Ct 267, 272; 408 A2d 159 (1979). (Although, in *Snyder v Harmon,* 522 Pa 424, 435, n 7; 562 A2d 307 [1989], the Pennsylvania Supreme Court disavowed the statutory distinction made by the *Mistecka* court, this does not undercut the ruling for which *Mistecka* is cited.)

Users of Michigan expressways observe such protective fencing on overpasses in urban areas.

and for a maintenance failure.[27]

### B

The constant reiteration in the instant case of the phrase "*of* the building *itself*," taken from *Reardon,* suggests that, although that phraseology was indeed used in *Reardon*—in the context of distinguishing between an assault by an "intervening party" and "a condition *of* the building itself" —the word "of" and the word "itself" mean to the majority that, in construing the exception, the word "building" is so far paramount that it trumps "dangerous or defective" and mandates judicial desuetude for "repair and maintain."

The majority then expands "of the building itself" by adding a gloss limiting "building" to "permanent structure or physical integrity of the building." Having made that leap, the majority continues its activism, expanding the judicially created limitations by adding, as well, the "transitory" and the "more-than-negligence" limitations.

The majority argues that grease or oil on a hallway floor is a condition *in* a building and not a

The Supreme Court of Missouri, en banc, under a statute providing for liability for " '[i]njuries caused by the condition of a public entity's property,' " held that the state was subject to liability for the alleged placement of a *temporary* partition against a ladder on which a worker was working while servicing the elevator of a state building that resulted in the worker falling and sustaining injuries. *Alexander v State,* 756 SW2d 539, 541 (Mo, 1988).

[27] Failure of custodial crew to remove a stick from a lawn before another crew mowed the lawn causing injury to the plaintiff who was struck by the flying stick, subjected the governmental agency to liability under an exception for injuries caused by a " 'condition of the public entity's property.' " *Jones v St Louis Housing Authy,* 726 SW2d 766, 774 (Mo App, 1987). See Mo Rev Stat, § 537.600.1(2).

Failure to trim foliage found to be causally related to surprise attack by a mugger, subjected a governmental entity to liability under an exception for " 'dangerous condition of its property . . . .' " *Peterson v San Francisco Community College Dist,* 36 Cal 3d 799, 809; 205 Cal Rptr 842; 685 P2d 1193 (1984).

condition *of* the building,[28] and therefore is not a "condition of the building itself."[29] To be sure, a condition in or on a floor of a building is a condition in a building because a floor is in the building. A condition, in or on a floor, is nonetheless also a condition of the building.

If a floor of a building was structurally uneven, it would be both a condition *in* the building and a condition *of* the building. That such a condition is *in* the building does not mean that it is not also a condition *of* the building.

The emphatic appositive "itself" means "that identical one,"[30] and adds nothing, when employed in a judicial opinion, to, nor can it modify, "building," the word used in the statute. "Itself," when employed in a judicial opinion, means in this context "that very building." The use of "itself" in *Reardon* did not and could not change the meaning of "building," the word used in the statute without "itself."

C

This Court is called upon in this case to expound concerning the building exception, not *Reardon.* As appears from the majority opinion, opinions of this Court are increasingly ephemeral. The statute is more enduring.

The majority appears to read out of the statute, for the time being or until possibly the next case, both the first prong, "repair and maintain," and the second prong, "dangerous or defective condition," of the building exception.

---

28 *Ante,* p 163. See also *id.,* p 164.

29 *Id.,* pp 161 and 168.

30 See, e.g., *Webster's Third New International Dictionary,* p 1204: "The letter *itself* was missing." (Emphasis added.) *The Random House Dictionary of the English Language* (2d ed, unabridged), p 1017: "Even without flowers, the bowl *itself* is beautiful." (Emphasis added.)

In the next case, the Court could continue in the direction in which it appears to be headed and declare, on the basis of the analysis and language employed in the instant case, that "of the building itself" includes only the roof and four outer walls,[31] but then only if the governmental agency has, possibly, been reckless or *grossly* negligent, not "merely" negligent, in selecting the contractor who installed the roof and four outer walls, but not if there was a design[32] or foundation defect because a design or foundation defect is not "*of* the building itself"—a foundation defect is not in or of the building, but underneath the building.

### III

The majority has developed its construction of the meaning of the building exception without considering either decisions in other jurisdictions construing similar statutory language or whether the limitations it has imposed by judicial construction are consistent with the construction this Court has, in earlier decisions, placed on the highway[33]

---

[31] Under the lexicon which the majority is developing, a dangerous or defective condition of a tile, dirt or mud floor might not be encompassed by the building exception because the "permanent structure or physical integrity of the building" is unaffected by the floor, or whether there even is a floor. A roof and four outer walls would constitute a "permanent structure" and there would be "physical integrity of the building" even if there is an abyss where one would ordinarily expect to find a floor.

[32] In *Reardon, supra,* p 410, this Court said that it reiterates the proposition that a building may be dangerous or defective because of "improper design." See n 18 for full text.

[33] Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. [MCL 691.1402(1); MSA 3.996(102)(1).]

and motor vehicle[34] exceptions.

### A

Courts in other jurisdictions, construing "dangerous condition of a public building," have concluded that failures of maintenance are included.[35]

Statutes in a number of other jurisdictions use the term "property" or "real estate" rather than "building" in stating the exception.[36] I would read the legislative intent in using the word "building," rather than "property" or "real estate," as excluding parks and recreational facilities, but not as excluding areas that are part of the curtilage of the building. Such a construction would be consistent with the construction of the building exception by this Court in *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978),[37] and

---

[34] Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . . [MCL 691.1405; MSA 3.996(105).]

[35] See n 41 and accompanying text.

[36] See, e.g., Tenn Code Ann, § 9-8-307(a)(1)(C); Tex Civil Practice & Remedies Code Ann, § 101.021(2); Mo Rev Stat, § 537.600.1(2); Ill Rev Stat, ch 85, ¶ 3-102.

The Ohio statute speaks of "public grounds" rather than "public building." See Ohio Rev Code Ann, § 2744.02(3).

[37] In *Reardon, supra,* p 413, this Court said:

In *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978), the plaintiff was injured on a permanently attached playground slide immediately adjacent to the defendant's school building. In an opinion joined by four other justices on the public building exception issue, Justice FITZGERALD held that the Legislature intended that the statutory exceptions to governmental immunity impose upon governmental entities the duty to maintain safe public places. *Id.* at 285. Thus, the Court found the building exception applicable to the admittedly dangerous and defective slide, despite the fact that the slide itself was not a building. See also *Tilford v Wayne Co General Hosp,* 403 Mich 293; 269 NW2d 153 (1978) (building exception applicable where plaintiff injured on sidewalk immediately adjacent to hospital). This legislative purpose to maintain safe public places was later echoed in *Bush, supra* at 731-732 (public building exception applicable where claimed defect

with a correct construction of the highway excep-
tion.[38] Such a construction would also be consistent
with the statement in *Reardon* that the Legisla-
ture imposed "a duty to *maintain* safe public
buildings."[39]

On extensive research of the statutes of other
states, no case has been found *in any jurisdiction*
limiting recovery under a building exception to a
"condition" that relates to the "permanent struc-
ture or physical integrity of the building"[40] or that

is absence of safety features), and *Lockaby v Wayne Co,* 406
Mich 65, 76-77; 276 NW2d 1 (1979) (building exception applica-
ble where plaintiff alleged lack of padding in cell where he was
being held).

In *Tilford, supra,* this Court concluded that the entrance walk of a
public building was within the building exception. No one opinion was
signed by four justices, but in opinions written by Justices FITZ-
GERALD, MOODY and RYAN, six justices so agreed. Justice RYAN's
commentary on the argument that an entrance sidewalk is not within
the building exception applies with equal force to the suggestion that
the condition of a floor of a public building is not within the building
exception:

> The defendant argues that the Legislature, in employing the
> term "building," intended to impose liability on governmental
> agencies that was extremely narrow in scope and applicable
> only to acts or omissions in connection with the care and
> maintenance of the walled, roofed edifice itself and no more.
>     In my view, that is an inappropriately narrow reading of the
> legislation and of the legislative purpose. [*Id.,* p 303.]

[38] See *Scheurman v Dep't of Transportation,* 434 Mich 619; 456
NW2d 66 (1990), opinion by BOYLE, J., p 637, opinion by BRICKLEY, J.,
p 637.

[39] *Reardon, supra,* p 415 (emphasis added).

[40] While New Mexico courts at one time required a finding of
"physical defect" in a building, this "narrower view" has been aban-
doned in more recent cases. See *Bober v New Mexico State Fair,* 111
NM 644, 653; 808 P2d 614 (1991) (overruling the rationale adopted in
the following cases: *Wittkowski v State,* 103 NM App 526; 710 P2d 93
[1985], overruled on other grounds *Silva v State,* 106 NM 472; 745
P2d 380 [1987]; *Gallegos v State,* 107 NM App 349, 351; 758 P2d 299
[1987]; *Martinez v Kaune Corp,* 106 NM App 489, 491; 745 P2d 714
[1987]; *Pemberton v Cordova,* 105 NM App 476, 478; 734 P2d 254
[1987]). See also *Castillo v Santa Fe Co,* 107 NM 204, 205; 755 P2d 48
(1988).

would exclude "transitory" conditions. Recovery for "mere negligence" is the most usual basis of recovery in other jurisdictions under a building exception, and also under highway and motor vehicle exceptions. No case was found imposing a higher standard.

A number of cases were found where the courts held that a governmental agency was subject to liability for maintenance failures under statutes worded similarly to the Michigan statute, i.e., liability was imposed for a dangerous condition *of* a building, or for failure to maintain.[41]

## B

This Court has not imposed with respect to the highway and motor vehicle exceptions the "transitory," "permanent structure or physical integrity,"

---

[41] See ns 26 and 27.

Additionally, a number of cases were found where the courts held that a governmental agency could be subject to liability for negligent maintenance such as failure to pick up loose shells on the shoulder of a state highway, *L & R Leasing v Allstate Ins Co*, 561 So 2d 1011 (La App, 1990), failure to provide traffic control on state fairgrounds, *Bober v New Mexico State Fair*, n 40 *supra*, and failure to trim back a tree that blocked the sidewalk, *Verity v Danti*, 585 A2d 65 (RI, 1991).

Cases were found where courts held, under fact patterns quite similar to the instant case, that a governmental agency could be subject to liability for negligent maintenance. In *Aubrey v Schenectady Co*, 46 AD2d 714; 360 NYS2d 307 (1974), the Supreme Court of New York, Appellate Division, affirmed the trial court's denial of defendant's motion to dismiss where a prisoner brought an action for injuries sustained when he slipped in water on the floor of his cell. The court held that the county could be held liable for negligent "maintenance of the penitentiary, and, more specifically, . . . maintenance of the plumbing and the cell wherein the plaintiff was confined [and] negligent maintenance of the physical plant of the county penitentiary." In *Harris v Ohio Dep't of Rehabilitation & Correction*, 61 Ohio Misc 2d 21; 573 NE2d 213 (1989), the Court of Claims of Ohio concluded that the plaintiff, an inmate at the Ohio Reformatory for Women, had presented sufficient evidence to prevail against the state for negligent maintenance where she slipped and fell on an unsecured manhole cover while traversing the reformatory grounds.

or "mere negligence" limitations imposed today with respect to the building exception.[42] Imposing such limitations with respect to the building exception is not consistent with this Court's decisions construing the other exceptions.

C

The majority's reliance on *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), in justification of its construction of the building exception, is misplaced. *Ross* concerned the meaning of the term "governmental function" as used in the section of the governmental tort liability act stating that a governmental agency shall be immune from tort liability when "engaged in the exercise or discharge of a governmental function."[43]

While *Ross* does indicate that a majority of the Court took a broad view of the scope of the term "governmental function," and was of the opinion that the scope of the term embraced most governmental activities, it does not follow that the Court, as then constituted, would have read the building exception or any of the other exceptions providing for governmental liability as narrowly as the Court today reads the building exception.

In all events, the correct construction of the highway, automobile and building exceptions, subjecting governmental agencies to liability, were not in issue in any of the nine cases consolidated in *Ross.*

---

[42] A governmental agency may be subject to liability for a highway design defect. See, e.g., *Killeen v Dep't of Transportation*, 432 Mich 1; 438 NW2d 233 (1989).

[43] MCL 691.1407(1); MSA 3.996(107)(1).