**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 3, 2001**

CHESTER E. BROWN, JR.,

    Plaintiff-Appellee,

v

GENESEE COUNTY BOARD OF
COMMISSIONERS,

    Defendant-Appellant.

No. 113915

_____

BEFORE THE ENTIRE BENCH (except TAYLOR, J.).

CORRIGAN, C.J.

We granted leave to consider whether an inmate, who claims that a dangerous or defective condition in a jail caused injuries, may avoid governmental immunity for tort liability under the statutory exception for public buildings, MCL 691.1406. The trial court granted summary disposition to defendant-county, but the Court of Appeals reversed and held that a jail falls within the exception.

We would reverse the Court of Appeals decision and reinstate the trial court's grant of summary disposition to defendant. Although a jail is "open for use by members of the public," an inmate is not a member of the "public" as contemplated by the Legislature when it enacted the public building exception to governmental immunity.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Plaintiff, an inmate in the Genesee County jail, injured himself when he slipped on water near a shower stall. He sued the county under the public building exception, MCL 691.1406. He alleged that improper drainage and the absence of a shower curtain had caused water to accumulate on the floor.[1]

The trial court granted summary disposition to defendant under MCR 2.116(C)(7) on the ground that the public building exception did not apply. The Court of Appeals initially affirmed. 222 Mich App 363; 564 NW2d 125 (1997). It observed that the shower area of the jail was not open to members of the public. This Court then remanded the case to the Court of Appeals for reconsideration in light of *Kerbersky v Northern Mich Univ*, 458 Mich 525; 582 NW2d 828 (1998). 459 Mich 881 (1998).

On remand, the Court of Appeals reversed. 233 Mich App

---

[1]Our resolution of this case does not require us to consider whether a structural defect, as opposed to a transitory condition, caused the accident. Cf. *Wade v Dep't of Corrections*, 439 Mich 158; 483 NW2d 26 (1992).

325; 590 NW2d 603 (1998). It noted that *Kerbersky* mandates analysis of the public's access to the building itself, *not* the specific accident site within the building. The Court of Appeals assumed that a jail is open for use by members of the public. Defendant now appeals.

## II. Standard of review

We review the grant or denial of a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). MCR 2.116(C)(7) permits summary disposition where immunity granted by law bars a claim. Courts must consider documentary evidence submitted by the parties. *Glancy v Roseville* , 457 Mich 580, 583; 577 NW2d 897 (1998). We review de novo questions of statutory interpretation. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

## III. Analysis

### A. Governmental immunity

Absent a statutory exception, a governmental agency is immune from tort liability when it exercises or discharges a governmental function. MCL 691.1407(1). A governmental function is "an activity which is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f).

MCL 45.16 expressly mandates operation of jails: "each organized county shall, at its own cost and expense, provide

at the county seat thereof . . . a suitable and sufficient jail . . . and keep the same in good repair." Defendant thus enjoys general immunity from tort liability in its maintenance and operation of the county jail. See *Jackson v Saginaw Co*, 458 Mich 141, 148; 580 NW2d 870 (1998).

B. PUBLIC BUILDING EXCEPTION

Several statutory exceptions to immunity exist.[2] This case implicates the public building exception:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or take action reasonably necessary to protect the public against the condition. [MCL 691.1406.]

For this exception to apply, a plaintiff must demonstrate:

> (1) a governmental agency is involved, (2) the public building in question was open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period or failed to take action reasonably necessary to

---

[2]They include: the highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; and the governmental hospital exception, MCL 691.1407(4).

4

protect the public against the condition after a reasonable period. [*Kerbersky*, *supra* at 529.]

Today we would hold that the plain statutory language also requires that the party seeking relief be a member of the "public."

1.  WAS THE JAIL OPEN FOR USE BY MEMBERS OF THE PUBLIC?

Mere public ownership of a structure does not satisfy the express language of the public building exception. A building must also be *open for use by members of the public*. *Kerbersky*, *supra* at 533.[3] When determining the public's access, we analyze the building itself, *not* the specific accident site within the building. *Id*. at 527.

Plaintiff claims to have injured himself near a shower stall in defendant's jail. Under *Kerbersky*, we examine the public's access to *the jail* rather than the shower area. *Id*.

*Green v Dep't of Corrections*, 386 Mich 459; 192 NW2d 491 (1971), held that a jail falls within the scope of the statutory exception.[4] In other decisions, this Court has

---

[3]Examples of publicly owned buildings that are not open for use by members of the public include: a city-owned apartment used as a private residence, *Griffin v Detroit*, 178 Mich App 302; 443 NW2d 406 (1989); a publicly owned building that is closed for renovations, *Dudek v Michigan*, 152 Mich App 81; 393 NW2d 572 (1986); and a locked building that was not designed for public access, *Taylor v Detroit*, 182 Mich App 583; 452 NW2d 826 (1989).

[4]While we agree with *Green* that a jail is subject to the public building exception, we do not approve the reasoning in that decision. This Court in *Green* failed to analyze whether a jail is open for use by members of the public. Moreover,

5

implicitly assumed as much.  See, e.g., *Wade v Dep't of Corrections*, 439 Mich 158; 483 NW2d 26 (1992).

We would reaffirm that a jail is open for use by members of the public.  Family, friends, and attorneys may generally visit inmates.  Members of the public may also enter a jail for other reasons, e.g., to apply for a job or make a delivery.

The fact that public access to a jail is limited does not alter our conclusion.  Schools fall within the exception even though members of the public may not enter whenever and wherever they please.  See *Sewell v Southfield Public Schools*, 456 Mich 670; 576 NW2d 153 (1998); *Bush v Oscoda Area Schools*, 405 Mich 716; 275 NW2d 268 (1979).  The public building exception applies to buildings with limited access, including schools and prisons.  *Kerbersky*, *supra* at 534; *Steele v Dep't of Corrections*, 215 Mich App 710, 715; 546 NW2d 725 (1996).

### 2. IS A JAIL INMATE A MEMBER OF THE PUBLIC?

We next consider whether an inmate is a member of the "public" who may avoid immunity under the public building exception.  To answer this question, we examine the statutory text.

---

for reasons discussed below, we would overrule *Green* to the extent that it treats *inmates* as members of the "public" for purposes of the statutory exception.

6

### a. Relevant principles of statutory interpretation

*Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), articulated the proper mode of interpretation:

> The rules of statutory construction are well established. The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). See also *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). This task begins by examining the language of the statute itself. The words of a statute provide "the most reliable evidence of its intent . . . ." *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996).

"Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: '[i]t is known from its associates,' see Black's Law Dictionary (6th ed), p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting." *Tyler v Livonia Schools*, 459 Mich 382, 390-391; 590 NW2d 560 (1999).

Also, when construing a statute, we presume that every word has meaning; our interpretation should not render any part of the statute nugatory. *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999).

### b. Interpretation

The first sentence of the public building exception

articulates the governmental agency's duty ("to repair and to maintain public buildings") and a limitation of that duty ("when [the buildings are] open for use by members of the public"). As discussed above, the limiting phrase explicitly restricts the types of buildings to which the duty extends. Unless a building is open for use by members of the public, it does not fall within the exception. But this phrase also limits implicitly the class of persons who may sue. It excludes persons who are not members of the public, i.e., those persons who are not present in the building as potential invitees.

The Legislature simply could have ended the first sentence of the statute after it articulated the duty owed by governmental agencies. It instead set forth a limitation of the duty. The Legislature would not have limited the duty to buildings that are open to members of the *public* if it had intended to protect persons who are *not* members of the public.

By including the public within the protected class, the Legislature implicitly excluded persons who are not members of the public. See *Hoste v Shanty Creek Management, Inc*, 459 Mich 561, 572, n 8; 592 NW2d 360 (1999) (the express mention of one thing in a statute impliedly excludes other similar things). Thus, allowing *anyone* to sue would effectively nullify the limiting phrase.

8

Read in context, therefore, the duty created in the statute protects *members of the public* from dangerous and defective conditions in public buildings.  We decline to read the statutory language out of context or to "stretch" the common, ordinary meaning of the words to include a class of persons whom the Legislature expressed no intent to protect.[5]

Jail inmates are not members of the public for purposes of the public building exception.[6]  Unlike a person who enters a jail, e.g., to meet with an inmate, make a delivery, or apply for a job, an inmate does not visit a jail as a potential invitee.  Instead, inmates are *legally compelled* to be there.  Inmates thus are not within the class of persons the Legislature intended to protect from defects in public buildings.[7]

---

[5]Our concurring colleague believes that a person who is not a member of the public may sue for injuries that occur in an *area* of a public building that is open to the public.  The statutory text, however, plainly refers to *buildings* that are open to *members of the public*; it does not refer to *areas* of public buildings that are open to persons who are *not* members of the public.  Moreover, *Kerbersky*, *supra*, held that the situs of an injury in a public building is not relevant.

[6]Our concurring colleague agrees that an inmate is not a member of the public, but relies on different language in the statute to reach that conclusion.

[7] Our proposed holding today is limited to jail inmates; we offer no view regarding other classes of persons.  It is worth observing, however, that unlike jail inmates, students attending a public school are not legally compelled to be there.  They have other choices, including charter schools, private schools, and home schooling.

It is undisputed that plaintiff was an inmate when he injured himself near a shower stall in defendant's jail. He therefore was not a member of the public for purposes of the public building exception.[8]

IV. CONCLUSION

A jail is open for use by members of the public. However, jail inmates are not members of the public and thus cannot avoid governmental immunity under the public building exception. Accordingly, we would reverse the Court of Appeals decision and reinstate the trial court's grant of summary disposition for defendant.

WEAVER and YOUNG, JJ., concurred with CORRIGAN, C.J.

---

[8]The dissent offers no analysis of the text of the public building exception to support its view that inmates are "members of the public." Instead, the dissent relies on the "logic" in *Green*, *supra*, and dicta from other cases.

Our duty to honor the intent of the Legislature, as expressed in unambiguous statutory text, is paramount. This Court in *Green* offered no analysis to support its assertion that an inmate "is a member of the public community." *Id*. at 464. As we have explained, treating inmates as "members of the public" would nullify the limiting phrase in the public building exception. We decline to elevate an isolated, conclusory assertion in *Green* above the plain language of the public building exception.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

CHESTER E. BROWN, JR.,

    Plaintiff-Appellee,

v                                                                No.  113915

GENESEE COUNTY BOARD OF
COMMISSIONERS,

    Defendant-Appellant.

_____

MARKMAN J. (*concurring*).

I concur in the result reached in the plurality opinion because I agree that the public building exception to governmental immunity is not applicable in this case, although I reach this conclusion on the basis of a different analysis than that of the plurality opinion's.  Accordingly, I concur in the plurality opinion's reversal of the decision of the Court of Appeals and the reinstatement of the trial court's grant of summary disposition in favor of defendant.

First, I agree with the plurality opinion's conclusion

that a jail is "open for use by members of the public," as well as in its analysis in reaching this conclusion. Second, I agree that an inmate is not a member of the public within the meaning of the public building exception. However, I respectfully disagree with the analysis by which the plurality opinion reaches this conclusion. It reaches such a conclusion on the basis of the statutory language that limits the government's duty to repairing and maintaining public buildings that are "open for use by members of the public." In contrast, I reach this same conclusion on the basis of the statutory language that limits the government's liability to injuries caused by failing to "take action reasonably necessary to protect the public against the condition." We both conclude that a jail inmate is not a member of the public for purposes of the public building exception in order to avoid rendering the language of the statute meaningless by encompassing within the definition of *public* virtually everyone. The difference in our analyses is that I come to this conclusion in order to avoid rendering the term "public" as contained in the last sentence of the statute meaningless, whereas the plurality opinion comes to the same conclusion in order to avoid rendering the term "public" as contained in the first sentence of the statute meaningless.

Finally, I disagree with the plurality opinion's conclusion that a party seeking relief under the public building exception must *be* a member of the public. The essential difference between my interpretation of the statute and that of the plurality is that I view the statute as a "where" statute while it views the statute as a "who" statute. In other words, I believe that the statute limits the government's liability to certain *places*, i.e., public buildings that are "open for use by members of the public." In contrast, the plurality opinion asserts that the statute limits the government's liability to certain *people*, i.e., members of the public.

## I. ANALYSIS

I agree with the plurality opinion's conclusion that an inmate is not a member of the public within the meaning of the public building exception. However, I come to this conclusion for reasons different from the plurality opinion's. The plurality reaches this conclusion on the basis that the limitation of the government's duty to only public buildings that are "open for use by members of the public" also implicitly limits the government's duty to *only* members of the public. Slip op at 8. In my view, the language "open for use by members of the public" limits *only which* buildings are

3

public buildings for purposes of the public building exception. Accordingly, a jail is a public building within the meaning of the public building exception because it is "open for use by members of the public."

In my judgment, the important issue in this case is not merely whether defendant was a member of the public, but rather whether action by the defendant "was reasonably necessary to protect the public against the [alleged dangerous or defective] condition" of the public building. The public building exception statute provides:

> Governmental agencies are liable for bodily injury and property damages resulting from a dangerous or defective condition of a public building if the governmental agency . . . failed to . . . take action reasonably necessary to *protect the public* against the condition. [MCL 691.1406 (emphasis added).]

It is clear from the language of the statute, i.e., "necessary to protect the public," that the Legislature intended to limit the government's liability, in that the government only is liable for failing to "take action reasonably necessary to protect the public." Thus, the relevant question is whether action was "necessary to protect the public." Because the government is only liable for injuries caused by failing to "take action reasonably necessary to protect the public," if a member of the public is injured in a "public building," the

4

government may be liable.[1]

However, because this liability is limited to failing to "take action reasonably necessary to protect the public," if a person who is not a member of the public is injured in a "public building," the government may only be liable if the plaintiff was injured in an area of the building open to the public.  This is true because, in order to protect members of the public, the government must keep areas of public buildings that are open to members of the public free from dangerous or defective conditions.[2]  However, because this liability is limited to failing to "take action reasonably necessary to protect the public," the government is not liable for failing to repair and maintain areas of public buildings not open to the public, unless a member of the public is actually injured therein.  See *Kerbersky v Northern Mich Univ;* 458 Mich 525,

---

[1] Plaintiff would still have to prove that the injury was caused by a dangerous or defective condition of the building and that the governmental agency had knowledge of the condition and failed to remedy the condition after a reasonable period.

[2] Because the government is liable for failing to "take action reasonably necessary to protect the public," the government may be serendipitously liable for failing to protect a person who is not a member of the public, if that person is injured in an area of the building open to the public.  This liability does not arise because of some duty owed to the person who is not a member of the public; rather, it arises from the duty owed to protect members of the public. The person who is not a member of the public is merely an incidental beneficiary of this duty owed to the public.

527; 582 NW2d 828 (1998).[3]  Therefore, in order for the public building exception to apply, plaintiff must establish that (1) he was a member of the public, or (2) he was injured in an area of the building open to the public.

The plurality opinion concludes that a party seeking relief under the public building exception must be a member of the public.  Slip op at 5.  It asserts that the limitation of the government's duty to public buildings that are "open for use by members of the public" also implicitly limits the government's duty to *only* members of the public.  Slip op at 8.  I respectfully disagree.  The statutory language clearly expresses the Legislature's intent for the government's duty to only apply to certain buildings, but it says nothing about limiting the government's duty to certain people.

---

[3] *Kerbersky* held that the government is liable to members of the public for injuries caused by dangerous or defective conditions of public buildings, regardless of whether the accident site was open to members of the public.  However, *Kerbersky* did not distinguish between members of the public and persons who are not members of the public.  Thus, consistent with *Kerbersky*, I would continue to hold that the government may be liable to members of the public, regardless of whether the specific accident site was open to members of the public.  However, I would now make the distinction mandated, in my judgement, by the statute, between members of the public and persons who are not members of the public.  I would conclude that, even though the government may be liable to members of the public injured in an area of the building not open to members of the public, the government is not liable to persons who are not members of the public who are injured in an area of the building not open to members of the public.

6

The plurality opinion contends that "[t]he Legislature would not have limited the duty to buildings that are open to members of the *public* if it had intended to protect persons who are *not* members of the public." *Id*. at 8 (emphasis in the original). Although I do not know with any certainty what motivated the Legislature in this regard, I suspect that it included this language to ensure that the public building exception would apply to buildings that are open, to some degree, to the public, such as jails and office buildings, but not to buildings that are altogether closed to the public, such as electrical substations and data facilities. Had it merely limited the government's duty to members of the public, without limiting the government's duty to public buildings that are "open for use by members of the public," the statute may well have imposed what the Legislature perceived as an unreasonable burden upon the government to maintain and repair such "public buildings" as substations and data facilities at an unnecessarily high level. The corollary to the plurality opinion's argument, of course, is that if the Legislature had intended to protect only members of the public, it could have just as easily stated that proposition, as well.

A. IS A JAIL INMATE A MEMBER OF THE PUBLIC WITHIN THE MEANING OF THE PUBLIC BUILDING EXCEPTION?

In determining whether the government is liable for

injuries sustained by a plaintiff under the public building exception, the first inquiry is whether the plaintiff is a member of the public. "The primary goal of judicial interpretation is to ascertain and give effect to the intent of the Legislature." *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 598; 608 NW2d 57 (2000). This Court's obligation is to determine the Legislature's intent "as gathered from the act itself." *Id*. MCL 691.1406 provides that a governmental agency is liable for failing to do what is "reasonably necessary to protect the public" against dangerous or defective conditions in public buildings. The logical reading of this statute is that the Legislature intended to limit the government's liability to injuries caused by the government's failure to protect members of the public. It is clear from the plain words of the statute, i.e., "necessary to protect the public," that the Legislature did not intend under the public building exception for governmental agencies to be liable for injuries caused by the government's failure to do what is necessary to protect persons who are not members of the public, such as jail inmates.

A jail inmate is not in the class of persons the Legislature intended to protect when it enacted the public

8

building exception to governmental immunity.[4]  This is evidenced by the statutory language limiting a governmental agency's liability to injuries caused by the government's failure to take action to protect members of the public. People who enter jails to visit inmates are members of the public whom the Legislature intended to protect.  However, in my judgement, an inmate who is legally compelled to be at the jail is not a member of the public for purposes of the public building exception.

This Court's interpretation of a statute must avoid denying effect to portions of that statute.  *Piper v Pettibone Corp*, 450 Mich 565, 571-572; 542 NW2d 269 (1995). If we were to interpret "public" to include inmates, we would be denying effect to a portion of the public building statute.  The Legislature intended governmental agencies to only be liable for failing to protect members of the public. However, if we interpret "public" to include inmates, governmental agencies would effectively be liable to everyone because, if an inmate is a member of the public, it is difficult to conceive of who would not be considered to be part of such a class.  The inmate is segregated from the

---

[4] The government may still be liable to persons who are not members of the public, such as jail inmates, if they are injured in an area of a public building open to the public, as discussed above.

9

public, he is severely limited in his ability to intermingle with the public, and under typical circumstances is confined to an area in which the public has no right to be. I would conclude that the statute does not impose liability upon governmental agencies for failing to do what is necessary to protect inmates of a jail for purposes of the public building exception. Accordingly, I agree with the plurality opinion's conclusion that a jail inmate is not a member of the public within the meaning of the public building exception, and thus I concur with the plurality opinion's overruling of that part of *Green v Dep't of Corrections*, 386 Mich 459; 192 NW2d 491 (1971), which held that inmates are members of the public community whether in or out of jail.[5]

---

[5] The dissent criticizes the plurality opinion's overruling of *Green*. *Post* at 3. The dissent asserts that, "despite the plurality's misguided belief that we can ignore precedent whenever this Court's reading of a statute would lead to a different result than that of a prior Court, I continue to find value in respecting precedent." *Id*. In my judgment, the plurality opinion did not ignore precedent; rather, it accurately explained why it was necessary to overrule *Green* in order to enforce the plain meaning of the statutory language. Although I, like the dissent, find considerable value in respecting precedent, I also find value in enforcing the plain meaning of statutory language. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 151; 615 NW2d 702 (2000) (holding that "we are duty-bound to overrule past decisions that depart from . . . the plain language of the statutory clause . . ."). I agree with the plurality opinion that this Court should not "elevate an isolated, conclusory assertion in *Green* above the plain language of the public building exception." Slip op at 10, n 8. Further, to place the *Green* decision in context, I note that *Green* was decided
(continued...)

## B. Was Plaintiff Injured in an Area of the Building Open to the Public?

In determining whether the government is liable for injuries sustained by plaintiff under the public building exception, the second inquiry is whether the plaintiff was injured in an area of the building open to the public. In order to protect the public, governmental agencies must ensure that all areas of public buildings, to which the public has access, contain no dangerous or defective conditions. It would be illogical to hold that a governmental agency must keep *all* areas of a public building free from dangerous or defective conditions, because the statute expressly provides that a governmental agency only is liable for failing to protect the "public" from those conditions. Thus, governmental agencies are not liable for

---

[5](...continued) during a period in which this Court gave the term "governmental function" a narrow reading, while giving broad readings of the statutory exceptions to governmental immunity. In contrast with that prior era, we now interpret the term "governmental function" broadly and construe the exceptions narrowly. *Ross v Consumers Power Co(On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). Moreover, in *Green*, the Court focused its analysis on whether the building was a pubic building, i.e., "open for use by members of the public." The Court never discussed whether action was "necessary to protect the public." *Green* held, in the context of whether a jail is a public building, that an inmate is a member of the public, whereas I would now hold in the context of whether action is "necessary to protect the public" from a defective or dangerous condition of a public building, that an inmate is not a member of the public.

11

failing to keep areas of public buildings to which the public does not have access free from dangerous or defective conditions, unless that condition, in fact, causes a member of the public injury.  See *Kerbersky*, *supra* at 527.

*Kerbersky, supra* at 527, held that "a member of the public injured as the result of a defect[ive] or dangerous condition of a building that is open to members of the public may invoke the public building exception to governmental immunity, even if the person is injured in an area of the building not open for use by members of the general public." I would reaffirm that holding.  What I would hold today is that a person who is not a member of the public cannot invoke the public building exception to governmental immunity if that person is injured in an area of the building not open to the public.  However, a person who is not a member of the public may invoke the public building exception if that person was injured in a part of the building that is open to the public.  In sum, a member of the public can invoke the public building exception, regardless of whether the specific accident site was open to members of the public, but a person who is not a member of the public cannot invoke the public building exception unless the accident site was open to members of the public.  I reach this conclusion, not because it necessarily conforms with my own views about the proper

12

contours of governmental immunity, but because I believe that it most closely conforms with the language of the public building exception.

The Court, in *Kerbersky*, concluded that, when determining whether a building is a public building for purposes of the public building exception, the situs of the injury is irrelevant.  However, *Kerbersky* did not conclude that the situs of the injury is irrelevant for *all* purposes. I would concur with *Kerbersky*, in that, when determining whether a building is a public building, the proper inquiry is into the public nature of the building itself, not merely the specific accident site.  Thus, in deciding that a jail is a public building, I examined the jail itself, not merely the shower area in which plaintiff was injured.  However, the situs of an injury is relevant when determining whether the government is liable for failing to "take action reasonably necessary to protect the public."  In *Kerbersky*, the Court concluded that the government is liable to a member of the *public* who is injured as the result of a dangerous or defective condition of a public building, regardless of whether that person was injured in an area of the building open to the public.  Therefore, the situs of an injury is irrelevant when determining the government's liability to a member of the *public*.  However, *Kerbersky* did not make the

distinction between members of the public and persons who are not members of the public. I now make this distinction, which is, in my judgment, mandated by the statute. The government is liable for injuries to members of the public, regardless of where they are injured in the building, because the government is liable for injuries caused by failing to take remedial action "reasonably necessary to protect the public." But, the government is liable to persons who are not members of the public *only* if they are injured in an area of the building open to the public because the government is only liable for injuries caused by failing to take remedial action when such action was "reasonably necessary to protect the public." Therefore, I would conclude that, even though a jail is a public building, the public building exception does not apply to an inmate injured in an area of that jail not open to the public.[6]

---

[6] The plurality opinion asserts that the statute does not support my position that the public building exception is applicable to people who are not members of the public who are injured in an area of a "public building" that is open to the public. Slip op at 9, n 5. I respectfully disagree. The statute provides that governmental agencies are liable for injuries caused by its failure to "take action reasonably necessary to protect the public against the condition." Clearly, this means that governmental agencies are liable for injuries caused by its failure to repair and maintain areas of "public buildings" that are open to the public because, in that case, action would be "reasonably necessary to protect the public." What the statute does not support, in my judgment, is the plurality's holding that governmental

(continued...)

In the present case, members of the public did not have access to the shower area, which is where plaintiff was injured. Because plaintiff was not a member of the public and was injured in an area of the jail that was not open to the public, defendant should not be held liable under the public building exception for failing to keep the shower area free of defective or dangerous conditions.

## II. CONCLUSION

The government is generally immune from tort liability. However, there are several statutory exceptions that apply to this broad grant of immunity, one being the public building exception. I agree with the plurality opinion that a jail is a public building "open for use by members of the public." I also agree that plaintiff is not a member of the public. However, in my judgment, that is not the end of the inquiry. The plurality views this statute as a "who" statute, meaning

---

[6](...continued)
agencies are never liable for injuries sustained by people who are not members of the public.

The plurality opinion also asserts that "*Kerbersky*, *supra*, held that the situs of an injury in a pubic building is not relevant." Slip op at 9, n 6. However, as I have already noted, *Kerbersky only* held that the situs of an injury in a public building is irrelevant when determining a governmental agency's liability to a member of the public. It did not hold that the situs of an injury is irrelevant when determining a governmental agency's liability to a person who is not a member of the public. This is the distinction I now make, which, in my judgment, is mandated by the statute.

15

that it limits the government's liability to certain *people*, i.e., members of the public. Therefore, the plurality concludes that because plaintiff is not a member of the public, he cannot recover under the public building exception. In my judgment, however, it is more consonant with the statutory language to view this statute as a "where" statute, meaning that it limits the government's liability to certain *places*, i.e., public buildings that are "open for use by members of the public." Additionally, the government is only liable for injuries caused by failing to take remedial action "reasonably necessary to protect the public." Therefore, because plaintiff is not a member of the public, it is necessary to determine whether plaintiff was injured in an area of the building that was open to members of the public. Because plaintiff is not a member of the public, and because he was injured in an area of the building that was not open to members of the public, defendant should not be held liable under the public building exception for failing to protect plaintiff from the alleged dangerous or defective condition. Accordingly, I concur in the plurality opinion's reversal of the Court of Appeals decision and the reinstatement of the circuit court's grant of summary disposition in favor of defendant.

CHESTER E. BROWN, JR.,

    Plaintiff-Appellee,

v

                                            N    o   .
                                             113915

GENESEE COUNTY BOARD OF
COMMISSIONERS,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I believe that leave was improvidently granted in this case. Further, I believe that the lead opinion unwisely departs from precedent and reaches out to discuss issues that have already been adequately addressed by the courts of this state. I agree with the lead opinion to the extent that it recognizes that jails are public buildings "open for use by members of the public" for the purposes of the public building exception to governmental immunity, MCL 691.1406. However, I dissent from the plurality's decision to examine the question whether inmates are members of the public, and

its decision to overrule a prior decision of this Court in favor of its own interpretation.

The issue argued by the parties in this case was whether the Genesee County jail is a public building open for use by members of the public within the meaning of MCL 691.1406. The lead opinion correctly concludes that it is. Slip op at 1. However, rather than resolving the case solely on the merits of the question before it, the plurality chooses to address the question whether an inmate is a member of the public. Moreover, the plurality dedicates a solitary sentence in a footnote to the fact that the question it deems of utmost importance in this case has already been addressed by this Court, *Green v Dep't of Corrections*, 386 Mich 459; 192 NW2d 491 (1971).

I cannot join the plurality's unsupportable decision to "overrule *Green* to the extent that it treats inmates as members of the public for purposes of the statutory exception." Corrigan, C.J. slip op at 6, n 4. Rather, assuming that the question should even be addressed in the context of this case, I would apply *Green*.

In *Green*, the plaintiff was an inmate in the Detroit House of Corrections, a municipal facility operated by the Department of Corrections. He injured himself while operating machinery in a prison shop area. This Court

2

explicitly rejected the argument that the Detroit House of Corrections was nonpublic simply because it was not open to the public at large.  The Court held that the facility was a "public building" for immunity purposes.  The Court also stated that, "plaintiff is a member of the community whether in or out of jail."  *Id*. at 464.

The basis for the present suit is the same as it was in *Green*.  Both cases were granted to examine the same statutory language, "[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public."  MCL 691.1406; see also *Green* at 464.  Other than to effectuate a policy change, I see no reason for this Court to depart from the logic *Green* used thirty years ago and that this Court has implicitly followed since.  The plurality offers nothing substantial in support of its observation that "[j]ail inmates are not members of the public for purposes of the public building exception."  Slip op at 9.  Given *Green's* finding to the contrary, I believe that the conclusion is erroneous.

Further, despite the plurality's misguided belief that we  can ignore precedent whenever this Court's reading of a statute would lead to a different result than that of a prior Court, I continue to find value in respecting precedent.  The plurality proclaims that *Green* is contrary to legislative

3

intent, and believes that *Green* made an isolated observation about whether prisoners are members of the public.  Given the plurality's distaste for precedent that would support a different view than its own, I question whether it gives any credence to the fact that the *Green* Court defined the "controlling" issue in that case as "whether the state, through the Department of Corrections, may be held to respond in damages for tortious injury sustained by a state-sentenced convict while he is incarcerated in the Detroit House of Correction."  *Green* at 462.

I would also note that the plurality completely ignores the fact that this Court has historically permitted suits arising out of prisoner injuries to be brought under the public building exception.  See *Johnson v Detroit*, 457 Mich 695; 579 NW2d 895 (1998)(a prisoner hanged himself in a jail cell); *Hickey v Zezulka*, 439 Mich 408; 487 NW2d 106 (1992)(a prisoner committed suicide in a jail cell); *Wade v Dep't of Corrections*, 439 Mich 158; 483 NW2d 26 (1992)(an inmate brought slip and fall action).  Thus, the plurality's plain observation not only contravenes *Green*, but would eliminate causes of actions that have been repeatedly recognized by this Court as being available.[1]

_____

[1] The plurality finds these decisions to be of no import since they did not squarely address whether prisoners are
(continued...)

4

For these reasons, I believe not only that leave was improvidently granted, but that the plurality improvidently uses this case as a vehicle for restricting the public building exception to governmental immunity. Therefore, I dissent.

KELLY, J., concurred with CAVANAGH, J.

TAYLOR, J., took no part in the decision of this case.

---

(...continued)
members of the public. However, they did not need to address the issue since it had already been decided in *Green*. Quite simply, the plurality today would change an established principle of Michigan law.